UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID ATZET,

    Petitioner,

v.

DANIEL PARAMO,

    Respondent.

No. 2:17-cv-1399 MCE KJN P

FINDINGS AND RECOMMENDATIONS

I. Introduction

Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed a motion to dismiss this action on two grounds: (1) the petition is untimely; and (2) the petition contains unexhausted claims.

As discussed below, the undersigned recommends that respondent's motion to dismiss this action as barred by the statute of limitations be granted.

II. Background

1. On September 26, 2008, in Shasta County Superior Court, petitioner pled guilty to seven counts of lewd or lascivious acts with a child under 14. (Respondent's Lodged Document ("LD") 1.) Petitioner was sentenced to an aggregate term of 20 years in state prison. (LD 1, 2.)

2. Petitioner filed an appeal; on November 22, 2011, the California Court of Appeal affirmed the judgment. (LD 2.)

1         3. Petitioner filed a motion to recall the remittitur and reissue the opinion; both were granted, and the opinion was filed on March 2, 2012. (LD 3.)

        4. Petitioner did not seek review in the California Supreme Court.

        5. On September 5, 2008,[1] petitioner filed a petition for writ of habeas corpus in the Shasta County Superior Court. (LD 4.) The petition was denied on November 5, 2008. (LD 5.)

        6. On November 2, 2012, petitioner signed[2] a petition for writ of habeas corpus filed in the Shasta County Superior Court. (LD 6.) On December 3, 2012, the petition was summarily denied, and the court stated:

> The issues raised in this petition are issues that either were raised on appeal, or should have been. A petition for writ of habeas corpus is not a substitute for an appeal, nor may it be used for a second appeal. In re Harris (1993) 5 Cal. 4th 813, 829, Ex parte Dixon (1953) 41 Cal.2d 756, 759.
>
> In addition, petitioner has filed a prior petition and has provided insufficient explanation for the filing of a successive petition. In re Clark (1993) 5 Cal. 4th 750.

(LD 7.)

        7. On April 8, 2013, petitioner filed a prior federal petition for writ of habeas corpus. Atzet v. Benito, No. 2:13-cv-0709 GEB DAD (ECF No. 1). On January 7, 2014, the federal petition was dismissed for failure to exhaust any claims. Id. (ECF No. 16.)

        8. On November 15, 2016, petitioner signed a petition for writ of habeas corpus filed in the Shasta County Superior Court. (LD 8.) Petitioner claimed that although he was charged with violations of Penal Code section 288(a), he "did not testify nor did Celeste testify to any illegal

////

---

[1] Unless otherwise indicated, petitioner is given benefit of the mailbox rule for all of his filings. See Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (under the mailbox rule, the petition is deemed filed when handed to prison authorities for mailing). Although respondent cited September 1, 2008, as the date petitioner filed the petition in the superior court, the proof of service is dated September 5, 2008.

[2] Under the mailbox rule, the date the prisoner signed the petition is considered the filing date absent evidence to the contrary. See Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003) (date petition is signed may be considered earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule).

2

act," and that, "there is no evidence of any illegal act." (LD 9.) On December 6, 2016, the petition was denied, as follows:

> It appears that the [petitioner] is under the false impression that his guilty pleas do not count, as the [petitioner] plead to seven counts of Penal Code section 288(a) and was sentenced to 20 years in prison. If a defendant, any defendant takes a plea deal, there is no need for a trial. That is what happened in this case. The [petitioner] pled and accepted a plea bargain. Had the evidence been insufficient (an argument that [petitioner] may be attempting to make) he either could have gone to trial or raised the issue in his appeal. He chose to do neither.
>
> The writ is DENIED as it is without merit.

(LD 9.)

9. On December 18, 2016, petitioner signed a petition for writ of habeas corpus filed in the California Court of Appeal, Third Appellate District. (LD 10.) The petition was denied on December 30, 2016. (LD 11.)

10. On February 9, 2017, petitioner signed a petition for writ of habeas corpus filed in the California Supreme Court, S240017. (LD 12.) He raised one claim:

> I was denied my constitutional right to due process of law resulting in (2) counts of P.C. 288(a) with Celeste A. I'm innocent and there's no evidence, testimony, or witnesses indicating any wrongdoing. These charges are illegal!

(LD 12.) On April 26, 2017, the petition was denied without comment or citation. (LD 13.)

11. The instant federal petition was constructively filed on June 21, 2017.[3] (ECF No. 1 at 42.)

III. Legal Standards - Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court. . . ." Id. The Court of Appeals for the Ninth Circuit has referred to a respondent's motion to dismiss as a request for the court to dismiss under Rule 4 of the Rules Governing § 2254 Cases. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420

---

[3] The petition was signed on June 6, 2017, but the proof of service states it was mailed on June 21, 2017. (ECF No. 1 at 42.)

3

(1991). Accordingly, the court reviews respondent's motion to dismiss pursuant to its authority under Rule 4.

III. Statute of Limitations

    A. Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became law on April 24, 1996, imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. This statute of limitations provides that,

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody, pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244 (d)(1).

Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2). Generally, this means that the statute of limitations is tolled during the time after a state habeas petition has been filed, but before a decision has been rendered. Nedds v. Calderon, 678 F.3d 777, 780 (9th Cir. 2012). However, "a California habeas petitioner who unreasonably delays in filing a state habeas petition is not entitled to the benefit of statutory tolling during the gap or interval preceding the filing." Id. at 781 (citing Carey v. Saffold, 536 U.S. 214, 225-27 (2002)). Furthermore, the AEDPA "statute of limitations is not tolled from the time a final decision is

issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval." Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), overruled on other grounds by Carey, 536 U.S. at 214. In Carey, the United States Supreme Court held that the limitation period is statutorily tolled during one complete round of state post-conviction review, as long as such review is sought within the state's time frame for seeking such review. Id., 536 U.S. at 220, 222-23. State habeas petitions filed after the one-year statute of limitations has expired do not revive the statute of limitations and have no tolling effect. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001).

B. Calculating the Limitations Period

Under 28 § 2244(d)(1)(A), the limitations period begins running on the date that petitioner's direct review became final or the date of the expiration of the time for seeking such review. Id.

Because petitioner did not seek review in the California Supreme Court, calculations of the limitations period begin with the March 2, 2012 date the California Court of Appeal reissued its opinion. (LD 3.) Forty days after March 2, 2012, i.e. April 11, 2012, the time to seek direct review ended. Cal. Rules of Court, rule 8.500(e)(1); Waldrip v. Hall, 548 F.3d 729, 735 (9th Cir. 2008). The statute of limitations period began running the next day, April 12, 2012. Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001). Absent tolling, the limitations period expired on April 12, 2013.

C. Statutory Tolling

As set forth above, petitioner filed five post-conviction challenges in state court.

Section 2244(d)(2) suspends the limitations period not only for the time during which a "properly-filed" application for post-conviction relief is "pending" in state court but also, in appropriate circumstances, "during the intervals between the denial of a petition by one court and the filing of a new petition at the next level, if there is not undue delay." Biggs v. Terhune, 339 F.3d 1045, 1046 (9th Cir. 2003); see also Carey, 536 U.S. at 219-25 (in California cases, a post-

conviction matter is "pending" between the denial of a petition in a lower court and the filing, "within a reasonable time," of a "further original state habeas petition in a higher court"). Continuous tolling under Section 2244(d)(2) -- commonly referred to as interval or gap tolling -- is available only if a prisoner acted promptly in seeking relief at the next state court level. See Evans v. Chavis, 546 U.S. 189, 191-92 (2006); Pace v. DiGuglielmo, 544 U.S. 408, 413-14 ) (2005).

### 1. First State Habeas Petition

Petitioner filed his first petition in state court on September 5, 2008, and was denied on November 5, 2008. Because this petition was filed and denied before direct review became final and the limitations period commenced on April 12, 2012, such petition provides no tolling. Waldrip, 548 F.3d at 735 (because the state habeas petition was filed before the federal limitations period began, "it had no effect on the timeliness of the ultimate federal filing.").

### 2. Second State Habeas Petition

On November 2, 2012, petitioner filed his second state habeas petition, which was denied because he failed to raise his claims on appeal, and because it was successive, citing In re Clark, 5 Cal. 4th at 750.[4] (LD 7.) The Supreme Court made clear that "[w]hen a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." Pace, 544 U.S. at 414. In addition, the Supreme Court held that a citation to In re Clark signals a habeas petition has been denied as untimely. Walker v. Martin, 562 U.S. 307, 310 (2011). See also Bonner v. Carey, 425 F.3d 1145, 1149 (9th Cir. 2005), amended, 439 F.3d 993 (9th Cir. 2006) (a petition denied as untimely is not properly filed and cannot toll the limitations period). An untimely state post-conviction petition is not considered "properly filed," and does not afford the petitioner statutory tolling of the AEDPA statute of limitations. See 28 U.S.C. § 2244(d)(2);

---

[4] Under California law, "[i]t has long been the rule that absent a change in the applicable law or the facts, the [state] court[s] will not consider repeated applications for habeas corpus presenting claims previously rejected." In re Clark, 5 Cal. 4th at 767. "The court has also refused to consider newly presented grounds for relief which were known to the petitioner at the time of a prior collateral attack on the judgment." Id. at 767-68. In Clark, the California Supreme Court went on to state, "[a] successive petition presenting additional claims that could have been presented in an earlier attack on the judgment is, of necessity, a delayed petition." Id. at 770.

Pace, 544 U.S. at 414. "Under Pace, if a state court denies a petition as untimely, none of the time before or during the court's consideration of that petition is statutorily tolled." Bonner, 425 F.3d at 1149.

Because the second state habeas petition was denied with a citation to In re Clark, the petition provides no statutory tolling, and the limitations period expired on April 12, 2013.

### 3. Prior Federal Petition

Petitioner filed a previous federal habeas petition challenging the same state court decision he challenges in the instant petition. Benito, No. 2:13-cv-0709 GEB DAD (ECF No. 1.) However, the filing of a federal habeas petition does not toll the statute of limitations. Duncan v. Walker, 533 U.S. 167, 181-82 (2001).

### 4. Third, Fourth & Fifth State Habeas Petitions

Petitioner's third state habeas petition was filed on November 15, 2016, again in the state superior court, and petitioner's fourth and fifth state petitions were filed even later. Because petitioner's third, fourth and fifth state habeas petitions were filed after the federal limitations period expired on April 12, 2013, none of these petitions may toll the limitations period. Ferguson, 321 F.3d at 823; Jiminez, 276 F.3d at 482. Absent equitable tolling, the federal petition is barred by the statute of limitations because it was filed over four years after the limitations period expired.

### D. Equitable Tolling

In his opposition to the motion to dismiss, petitioner argued that he is entitled to equitable tolling based on his chronic medical issues. (ECF No. 21.) Respondent was granted an extension of time to file a reply; on December 29, 2017, respondent filed a reply, along with a supplemental lodging of documents in support. (ECF No. 31.)[5] Following an extension of time, petitioner filed an authorized sur-reply. (ECF No. 37.) On May 4, 2018, respondent filed his authorized

////

////

---

[5] Respondent provided petitioner's complete medical records from R.J. Donovan Correctional Facility, as well as petitioner's inmate appeal history. (ECF No. 32; LD 14, 15.)

response. (ECF No. 40.) On May 14, 2018, petitioner filed an unauthorized[6] reply to respondent's response. (ECF No. 41.)

1. Legal Standards

"Equitable tolling may be available '[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim.'" McMonagle v. Meyer, 802 F.3d 1093, 1099 (9th Cir. 2015) (quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)). "A petitioner who seeks equitable tolling of AEDPA's one-year filing deadline must show that (1) some 'extraordinary circumstance' prevented him from filing on time, and (2) he has diligently pursued his rights." Luna v. Kernan, 784 F.3d 640, 646 (9th Cir. 2015) (citing Holland v. Florida, 560 U.S. 631, 649 (2010)). A petitioner must provide specific facts regarding what was done to pursue the petitioner's claims to demonstrate that equitable tolling is warranted. Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006).

"The threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (citation omitted).

> To apply the doctrine in "extraordinary circumstances" necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances "stood in his way" suggests that an external force must cause the untimeliness, rather than, as we have said, merely "oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.

Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir.) (internal citation omitted), cert. denied, 130 S. Ct. 244 (2009); see also Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003) (petitioner must show that the external force caused the untimeliness). It is petitioner's burden to demonstrate that he is entitled to equitable tolling. Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005).

////

---

[6] On January 30, 2018, petitioner was granted leave to file a sur-reply, and respondent was granted leave to file a response to the sur-reply. (ECF No. 35.) Petitioner was not authorized to file any further document. (Id.) In an abundance of caution, however, the undersigned has considered petitioner's unauthorized reply. (ECF No. 41.)

### 2. Standards Governing Mental Impairment

The Ninth Circuit has articulated a specific, two-part test for an equitable tolling claim based on a petitioner's mental impairment:

> (1) *First,* a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable to rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second,* the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

Bills v. Clark, 628 F.3d 1092, 1099-100 (9th Cir. 2010) (citations omitted) (italics in original); see also Orthel v. Yates, 795 F.3d 935, 938 (9th Cir. 2015) (the prisoner "must show extraordinary circumstances, such as an inability to rationally or factually personally understand the need to timely file, or a mental state rendering an inability personally to prepare a habeas petition and effectuate its filing."). "The relevant question [is,] '[d]id the mental impairment cause an untimely filing?'" Stancle v. Clay, 692 F.3d 948, 959 (9th Cir. 2012) (quoting Bills, 628 F.3d at 1100 n.3.) "The mental impairment must be so debilitating that it is the but-for cause of the delay, and even in cases of debilitating impairment the petitioner must still demonstrate diligence." Yeh v. Martel, 751 F.3d 1075, 1078 (9th Cir.), cert. denied sub nom. Yeh v. Biter, 135 S. Ct. 486 (2014), citing Bills, 628 F.3d at 1100.[7]

### 3. Extraordinary Circumstances

Petitioner contends that his depression and other chronic medical conditions constitute extraordinary circumstances warranting equitable tolling of the limitations period. Indeed, petitioner provides a detailed table of contents chronicling his medical issues from 1996 through 2017, which the court appreciates. (ECF No. 37 at 17-22.) However, as discussed below,

---

[7] As argued by respondent, the framework governing the evaluation of mental impairments is also useful in evaluating whether petitioner's medical conditions warrant equitable tolling.

petitioner fails to demonstrate that any of his chronic ailments, either separately or considered together, prevented him from filing his petition during the critical period the limitations period was running: April 12, 2012, through April 12, 2013, or thereafter.[8]

### A. Mental Health

First, petitioner "disagrees" with respondent's argument that petitioner's depression was properly treated and appears to have subsided, and claims the "record overwhelmingly supports petitioner's view." (ECF No. 37 at 2.) He notes that he suffered major depression on June 21, 2012, and 6 anti-psychotic drugs failed. (ECF No. 37 at 19.) Petitioner states that "Dr. Peters is the only one qualified to assess petitioner's depression." (ECF No. 37 at 9.)

Despite petitioner's prior struggles with failed anti-psychotic medications, early in the relevant time period, on June 21, 2012, a request for the nonformulary drug, Wellbutrin SR, was approved. (LD 14 at 297.) In addition to noting the prior drug failures, Dr. Peters stated that although plaintiff was authorized up to 300 mg of Wellbutrin daily, plaintiff

> has done well on 100 mg; had side effects of tremulousness so the dosing was changed to QOD (at bedtime) and he has done very well. His dark ruminations, self-abnegation and persistent anxiety about his compromised medical condition has attenuated.

(LD 14 at 297.) The prescription for Wellbutrin was approved again on September 13, 2012. (LD 14 at 271.) Petitioner points to no evidence demonstrating he was unable to function due to his depression, or that there was a causal connection between his depression and his inability to file a timely petition. See Henderson v. Allison, 2012 WL 3292010, at *7-9 (E.D. Cal. Aug. 13, 2012) (following review of numerous mental health records, prisoner failed "to demonstrate his

////

---

[8] The relevant time frame for purposes of analyzing whether petitioner's physical ailments constituted an extraordinary circumstance warranting equitable tolling commenced on April 12, 2012, when petitioner's conviction became final, and ended on June 21, 2017, when petitioner filed his federal habeas petition. See Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005) (focusing on the time period of petitioner's one-year statute of limitations in determining whether petitioner was entitled to equitable tolling), reh'g granted, opinion modified, 447 F.3d 1165 (9th Cir. 2006), cert. denied, 127 S. Ct. 979 (U.S. 2007); Leon v. Hedgpeth, 467 F. App'x 665, 666 (9th Cir. 2012). Thus, the undersigned does not specifically address petitioner's medical records provided for the period prior to April 12, 2012.

mental illness was so severe he was unable to understand the need to timely file or that the illness rendered him unable to prepare a habeas petition and file it.").

Also, petitioner is housed in the general population and assigned to the CCCMS[9] level of mental health care. Inmates designated to the CCCMS level of care "are those 'whose symptoms are under control or in partial remission'" and can function in the general prison population, administrative segregation, or segregated housing unit. Coleman v. Brown, 28 F. Supp. 3d 1068, 1074 (E.D. Cal. 2014). "Without any allegation or evidence of how petitioner's symptoms actually caused him not to be able to file despite his diligence, the court cannot find that he is entitled to equitable tolling." Taylor v. Knowles, 2009 WL 688615, at *6 (E.D. Cal. March 13, 2009), aff'd, 368 Fed. Appx. 796 (9th Cir. 2010) (no equitable tolling where petitioner failed to show his auditory hallucinations, severe depression, and anxiety "actually caused him not to be able to file despite his diligence"); see Henderson, 2012 WL 3292010 (denying petitioner's equitable tolling argument based on mental incompetence because petitioner made no allegations demonstrating a causal connection between petitioner's alleged depression and adjustment disorder and his inability to timely file a federal petition); see also Howell v. Roe, 2003 WL 403353, *4 (N.D. Cal. Feb. 20, 2003) (rejecting equitable tolling where petitioner's suicidal nature and depression did not make him mentally incompetent).

For these reasons, petitioner fails to demonstrate that his depression was so severe that it prevented him from filing a timely petition.

### B. Chronic Medical Conditions

Second, the medical records confirm that petitioner suffers from myriad serious and chronic medical conditions, as briefly summarized below.

////

////

---

[9] "CCCMS" is an acronym for the Correctional Clinical Case Management System and inmates designated to this level of care are those "whose symptoms are under control or in partial remission and can function in the general prison population, administrative segregation, or segregated housing units." Coleman v. Schwarzenegger, 2009 WL 2430820, *15 n.24 (E.D. Cal. 2009).

i. Autoimmune Diseases

In 1995, petitioner was diagnosed with autoimmune hepatitis, which is complicated by its progression to cirrhosis. (LD 14 at 2001, 1995.) He was started on steroids and azathioprine and listed for transplantation in the 1990s, but was taken off because of improvement. (LD 14 at 1830-31.) On May 25, 2010, petitioner was diagnosed with Sjogrens Syndrome, an autoimmune disorder, and also was treated with prednisone. (ECF No. 37 at 6.) A telemedicine report dated October 23, 2012, states that petitioner had liver biopsies in 1995, 1999, and 2010, but "the one done in 2010 had no significant findings to suggest active autoimmune process." (LD 14 at 1829.) A repeat liver biopsy in 2012 showed autoimmune hepatitis and "at least bridging fibrosis with nodularity suggestive of cirrhosis." (Id.) Petitioner's prednisone was increased to 40 mg on July 11, 2012, and he was given 50 mg of azathioprine "with good response" on his liver function tests. (Id.) He only took 40 mg prednisone for a few days, and then cut back to 15 mg by July 30, 2012. (LD 14 at 977.) On August 20, 2012, petitioner's labs revealed significant liver improvement. (ECF No. 37 at 9, citing LD 14 at 973.) On July 13, 2015, petitioner received an esophagogastroduodenoscopy with variceal esophageal band ligation; four bands were placed without complications. (LD 14 at 1772.)

ii. Disseminated Coccidiomycosis/Chronic Back Pain

In 2010, petitioner was diagnosed with disseminated coccidiomycosis ("Valley Fever" or "cocci") with epidural lumbar abscess. (LD 14 at 1829-31.) Petitioner was hospitalized for two weeks for lower back pain due to Valley Fever. (ECF No. 37 at 6.) Although surgery was recommended, he was treated with itroconazole. (LD 14 at 1829-31; ECF No. 37 at 6.) On June 11, 2012, petitioner was followed up for his cocci, "doing well," awaiting MRI, continuing medication. (LD 14 at 989.) On May 3, 2013, petitioner admitted he was not taking the itroconazole all the time because of the side effects: fatigue, forgetfulness, and leg swelling. (LD 14 at 960.)[10]

---

[10] Respondent argues that petitioner's noncompliance with his medication and treatment does not qualify as an extraordinary circumstance beyond his control. (ECF No. 31 at 5.) Petitioner argues, *inter alia*, that he had good reason for refusing to take itroconazole because it is highly toxic to the body's vital organs. (ECF No. 37 at 12.) As explained below, the court is not

12

On September 5, 2012, petitioner was taking methadone for chronic back pain. (LD 14 at 280.) Petitioner claims the methadone prescription was abruptly discontinued when he transferred, and he suffered withdrawal because no substitute was given. (ECF No. 37 at 9.) Petitioner completed an urgent health care request. (LD 14 at 966.) On September 25, 2012, petitioner was prescribed nortriptyline and Tylenol #3. (LD 14 at 965.) On September 27, 2012, petitioner admitted he did not take the nortriptyline, but wanted to continue the Tylenol #3. (LD 14 at 964.) The triage nurse advised petitioner to take the nortriptyline because the Tylenol #3 would be stopped on October 4, 2012, and the nortriptyline reduces the symptoms of chronic pain and is an alternative to narcotics. (LD 14 at 964.) It appears the Tylenol #3 prescription was continued. (LD 14 at 963 (October 8, 2012), 961 (November 7, 2012), & 953 (August 8, 2013 "ran out of Tylenol").) On July 2, 2013, petitioner complained of excruciating back pain. (LD 14 at 957.) His prescription for Tylenol was continued. (LD 14 at 954.) However, by August 7, 2017, petitioner was not taking Tylenol or any other pain medications. (LD 14 at 502.)

In 2013, Dr. Javeed Siddiqui, an infectious disease doctor at U.C. Davis, recommended that petitioner receive surgical drainage for the Valley Fever, and petitioner claims this is the fourth doctor to recommend back surgery, which still has not been provided. (ECF No. 37 at 10.)

### iii. Multiple Eye Conditions

Petitioner has had eye muscle surgery for strabismus (both eyes crossing inward), and as a result wore prisms in his glasses. (ECF No. 37 at 13; LD 14 at 1823.) He also has a history of central serous retinopathy for which he received laser in 2009 for subretinal fluid. (Id.) Petitioner complained of cataracts during the critical period in 2012. (LD 14 at 970, 982.) By October 12, 2014, petitioner complained that he had to close his left eye to read. (LD 14 at 824.) On November 5, 2014, with his new glasses, his vision was 20/25 OD and 20/40 OS, with a trace posterior subcapsular cataract in his right eye, and a more significant posterior subcapsular cataract in his left eye. (LD 14 at 1823.) In light of the developing cataracts, Dr. Skaf, an outside retinal specialist, recommended petitioner be evaluated by a cataract surgeon to see if he was a

---

required to reconcile these competing views in order to address the issue of equitable tolling.

13

candidate for surgery, or needs to wait longer. (Id.) Dr. Skaf noted that petitioner had "dot and blot hemorrhages and microaneurysms in the peripheral retina of each eye, typically consistent with diabetes, but could be related to petitioner's long-term steroid use. (Id.) Petitioner had cataract repair in February and June of 2015. (LD 14 at 772, 793.) He has a history of glaucoma. (LD 14 at 751.) He reported no visual symptoms on July 17, 2015. (Id.) Petitioner points to no specific evidence of eye issues since that date. (ECF No. 37 at 21-22.)

Petitioner argues that although he wasn't blind, his "eye diseases significantly hindered his ability to access the courts." (ECF No. 37 at 13.) He contends that his eyesight was further exacerbated by his other chronic diseases and "malpractice." (Id.)

### iv. Skin Disorders

Petitioner has a history of skin disorders. On July 17, 2015, petitioner was diagnosed with actinic keratosis and seborrheic keratosis and was referred to dermatology for a suspicious lesion on his left cheek. (LD 14 at 751.) From July 17, 2015, he was treated for recurrent squamous cell carcinoma of the left cheek, and subsequently his left neck and right ear; such treatment included at least four Mohs procedures, including on January 19, 2016, February 16, 2016, and September 23, 2016. (ECF No. 37 at 14, 21; LD 14 at 595, 1678.) One incision was so deep it penetrated the saliva gland, resulting in saliva drainage from September 23, 2016, to February 23, 2017. (ECF No. 37 at 14, 21; LD 14 at 595, 1678.) In addition, petitioner required repetitive cryotherapy treatments, and is still being provided additional treatments to date. (ECF No. 37 at 14.) Petitioner contends that the skin cancer hindered his access to the courts because of the required wound care, emotional stress and loss of sleep. (Id.)

### v. Discussion

The undersigned acknowledges that petitioner suffers from very serious and chronic medical conditions. Despite such medical conditions, however, petitioner was able to file a prior federal habeas petition within the limitations period. Benito, No. 2:13-cv-0709 GEB DAD. "[T]he actual filing may loom large in the final tolling determination for it might ultimately show that he was not actually delayed at all." United States v. Battles, 362 F.3d 1195, 1198 n.5 (9th Cir. 2004); see also Gaston, 417 F.3d at 1034 (rejecting prisoner's argument that his physical and

mental abilities constituted an "extraordinary circumstance" where he filed state habeas petitions both before and after the period in which he sought tolling, and he did not show that his condition was significantly worse during this interim time); see also Ramirez v. Yates, 571 F.3d 993, 997-1001 (9th Cir. 2009) (prisoner was not entitled to equitable tolling for the period that he was in administrative segregation and had limited access to the law library and copy machine, because the fact that these conditions were neither "extraordinary" nor made it "impossible" to file a timely petition was confirmed by the prisoner having filed a lengthy and well-researched motion in federal court and a discovery motion in superior court during the relevant period).

Such is the case here. On April 8, 2013, petitioner filed a 106-page federal petition raising multiple claims. Benito, No. 2:13-cv-0709 GEB DAD (ECF No. 1.) Because the petition was filed before the April 12, 2013 limitations period expired, the federal petition was timely. At the time petitioner filed his first federal petition, as well as throughout the critical period the limitations period was running, petitioner was suffering from the same chronic medical conditions, with the exception of the skin cancer. (ECF No. 37 at 17-20.) The timely filing of his first federal petition demonstrates that petitioner was capable of preparing and filing a timely federal petition. Thus, petitioner's serious medical conditions did not prevent him from timely-filing a federal petition.

Moreover, throughout the relevant time period, petitioner filed other petitions:

1. A petition for writ of habeas corpus in the Shasta County Superior Court on November 2, 2012 (LD 6);

2. A 33-page amended federal petition, raising four claims. Benito, No. 2:13-cv-0709 GEB DAD (ECF No. 7);

3. In November of 2016, he filed a petition in the Shasta County Superior Court (LD 8); and

4. In December of 2016, he filed a petition in the California Supreme Court (LD 10).

In addition, petitioner filed multiple administrative appeals throughout the relevant time period. (LD 15.) Indeed, petitioner filed two administrative appeals during the critical period, RJD HC 12047013 (September 11, 2012, and November 20, 2012). (LD 15 at 5.)

All of these filings belie petitioner's claim that his chronic medical conditions prevented him from filing a timely federal petition. Accordingly, this court cannot find that petitioner's chronic medical conditions constitute an extraordinary circumstance warranting equitable tolling for the over four year delay in filing the instant action.

### 4. Extraordinary Circumstances: Lack of Legal Training or Experience

The Ninth Circuit has repeatedly held that "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); Waldron-Ramsey, 556 F.3d at 1013 n.4 (a prisoner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling); Baker v. California Dept. of Corrections, 484 Fed. Appx. 130, 131 (9th Cir. 2012) ("Low literacy levels, lack of legal knowledge, and need for some assistance to prepare a habeas petition are not extraordinary circumstances to warrant equitable tolling of an untimely habeas petition.") Thus, equitable tolling is not warranted because petitioner lacked legal training or experience.

### 5. Diligence

Petitioner's claim to equitable tolling also fails because he has not been diligent. As set forth above, petitioner must demonstrate he diligently pursued his rights throughout the relevant period. Luna, 784 F.3d at 646. The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." Holland, 560 U.S. at 653; see also Bills, 628 F.3d at 1096.[11]

Here, petitioner was informed on December 18, 2013, that he had failed to exhaust his state court remedies as to any of his claims, yet he delayed over three and a half years before filing the instant petition on June 21, 2017. Despite being sentenced on April 28, 2009 (LD 1), petitioner did not file a state court petition until over three years later, on November 2, 2012.

---

[11] Because the undersigned finds that extraordinary circumstances did not prevent petitioner from filing a timely federal petition, the undersigned does not address the stop-clock approach adopted in Gibbs v. Legrand, 767 F.3d 879 (9th Cir. 2014) (under the stop-clock approach, the statute-of-limitations clock stops running when extraordinary circumstances first arise, but the clock resumes running once the extraordinary circumstances have ended or when the petitioner ceases to exercise reasonable diligence, whichever occurs earlier.)

Such lengthy periods of inactivity cannot constitute diligence. See Pace, 544 U.S. at 419 (prisoner sat on his rights for years before he filed his first petition, and after his proceedings became final before seeking relief in federal court).

### 6. No Equitable Tolling

For all the reasons discussed above, petitioner is not entitled to equitable tolling sufficient to render the instant petition timely. Accordingly, respondent's motion to dismiss the petition as barred by the statute of limitations should be granted.

## IV. Alternative Grounds

Respondent argues that claims one, two and three are unexhausted because petitioner failed to present such claims to the California Supreme Court. (ECF No. 20 at 6.) In his unauthorized reply, petitioner appears to argue that he exhausted his claims by filing petition S240017 in the California Supreme Court. (ECF No. 41 at 1.) However, because the undersigned recommends that this action be dismissed as barred by the statute of limitations, the undersigned need not address the issue of exhaustion.

## VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (ECF No. 20) be granted on the grounds that the petition is barred by the statute of limitations;

2. This action be dismissed with prejudice, and

3. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 7, 2018

/atze1933.mtd.hc.sol

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE